STATE OF TENNESSEE *ex rel. v.* R. L. MILLER.

1. MAGISTRATES. *Committing Court. Duties.* A party charged with murder, has the right to waive an examination before a committing court, and it is not, by law, made the duty of the magistrate in such a case to examine the witnesses and reduce their testimony to writing.

2. MANDAMUS. *Not the proper remedy. When.* Mandamus is not the proper remedy for such refusal of the magistrate to examine the witnesses and reduce their testimony to writing, even if by law required to do so, after the party has, by judgment of the committing court, been committed to jail.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county.    F. T. REID, J.

COLYAR & SON for The State.

GUILD and DODD for Miller.

FREEMAN, J., delivered the opinion of the court.

This is a proceeding by *mandamus*, asking the Circuit Judge of Davidson county to cause defendant, a justice of the peace, to examine the witnesses, on a charge of murder, reduce their testimony to writing, have it signed, and take the recognizance of material witnesses, to appear for the State on further prosecution of the case.

The facts of the case are, that two warrants in the

name of the State had heretofore issued against Samuel Langham, charging him with murder, by killing two men, to-wit: McAndrews and Julius Keister. The accused was arrested and brought before defendant, who had issued the warrants, who associated with him two other justices for the purpose of trial. On the arraignment of the prisoner for trial, he by counsel and in person waived a regular examination or investigation of the charges against him, and further stated he did not desire to make application for bail, and requested to be committed to jail, and be there held in custody to appear before the next term of the Criminal Court of Davidson county, on the charge of murder.

Thereupon the attorneys for the prosecution demanded that the testimony should be heard by the magistrates, and the same should be reduced to writing, as required by our statutes. After argument of the counsel on both sides, the court, or justices, were of opinion that the defendant having waived an investigation and demanded to be re-committed to jail, without bail, was entitled to do so. Therefore they adjudged said Langham should be remanded to jail, to await his trial at the next term of the Davidson county Criminal Court, to-wit: at January term, 1879—they entering the proper judgment, that the offense of murder had been committed, and there was probable cause to believe the defendant guilty thereof, etc.—and the papers were regularly filed with the clerk of the Criminal Court.

The question is, first, Was this a correct practice? and secondly, Whether the remedy by *mandamus* is

proper and effective to correct the error, if any, on the facts thus stated?

The sections of the Code bearing on this question are substantially as follows: Section 5056, under title "Mode of Examination," provides, at the examination the magistrate *shall* examine the witnesses for the prosecution on oath in the presence of the defendant, and such other witnesses as may be produced by the defendant. By the next section, it is enacted, after the examination of the witnesses for the State is closed, the magistrate shall inform the defendant that it is his right to make a statement in reference to the charge made against him, or that he may waive the same; and such waiver cannot be used against him on the examination before the magistrate or on *trial*. If the accused choose to make such statement, the same is to be taken down in writing, read over to him, and signed by him, or if he refuses to sign it, his reasons for such refusal stated. Then follows the questions that may be put to him. After the waiver of defendant of his *right* to make a statement, or after he has made it, his witnesses, if he produce any, may be sworn and examined. By section 5062, it is there provided, that the evidence of the witnesses examined shall be reduced to writing by the migistrate, or under his direction, and signed by the witnesses respectively. Under a previous chapter of the Code, we find by section 5017, that no person can be committed to prison for any criminal matter until examination thereof be first had before some magistrate. By section 5018, the magistrate is required to reduce the examination

of the accused to writing, if he submits to an examination, and also all the evidence adduced on both sides; and he is authorized to discharge, bail, or commit the accused, and to take all necessary recognizances to enforce the appearance of the defendant, the prosecutor or witnesses, at the proper court.

Upon these provisions of the Code, it is apparent they are intended and do regulate the trial of a case of the kind now before us, on the assumption, probably, that in every case there would be a contest; that a person accused would not go to prison, or be held to bail without having a case made out against him, justifying it by competent testimony.

In that event, the regulations are simple and easy to be understood in connection with other provisions of the Code. The issuance of the warrant of arrest is provided for, by which the party is to be brought before the magistate, opportunity to secure counsel, continuances, and then the mode of conducting before the court the trial, investigation, or "examination," as it is called, of the case, or charge on which the party has been arrested, with a view to his discharge, or to further proceedings, in all felony cases, before a court having jurisdiction; finally to determine upon the guilt or innocence of the accused. The action of the magistrate on this trial is but preliminary to this final proceeding, and we may add, in several aspects in aid of, and connected with, the future proceedings provided for by our law.

I cannot assent to the argument of the defendant in this case, that section 5018, providing that the

magistrate shall reduce the examination of the accused to writing, if he *submits* to an examination, refers to the proceedings at the trial, and that he can waive a trial by virtue of this section, and is affirmatively given the right by this section to waive a trial before the magistrate, and then in exercise of a *right* under the statute, prevent a trial, or the reduction of the testimony to writing by the magistrate.

Taken in connection with the other sections of the Code more specifically regulating this subject, I think it clear, this refers alone to the personal examination or interrogatories which the magistrate may make, or put to the accused with his consent, as provided by section 5059 and sub-section, and which the next section provides he may waive, or rather says so by implication, by saying "after waiver, etc., witnesses may be examined for the defendant."

This is shown by the further provision in section 5018, that the court shall not only reduce the examination of the accused, if he submits to one, to writing, but also the evidence adduced on both sides—thus distinguishing between examination of the accused and his trial; because if tried, whether he submits to answer the interrogatories or not, or makes a statement as provided for, still the magistrate must reduce the examination of the witnesses introduced to writing. A trial may be had as well without, as with an examination of the accused, or statement from him. In addition, the latter part of the section goes on to provide, the magistrate is authorized to "discharge, bail, commit the accused, and to take all recognizances to

enforce the appearance of defendant, prosecutor or witnesses at the proper court." If defendant can waive an examination and prevent a trial, or examination of his case, it is impossible all these requirements shall be properly met by the magistrate. He cannot discharge—he has not investigated. He cannot bail in cases capital, for he must see the proof to be "evident or presumption great," in order to decide the right to bail in such cases. He cannot take recognizance of witnesses, as provided by this and other sections, for he shall take from each *material* witness *examined* by him on the part of the State, a written recognizance in penalty of two hundred and fifty dollars, to appear and testify at the court to which the defendant must appear. It does not seem reasonable, that the Legislature intended that all these important provisions should be defeated, or rendered inoperative, or impossible to be performed, at the option of the accused. I take it, that it will not be a fair construction of the enactments of the Legislature, to hold that they are made dependent alone upon the option of the accused, who will certainly not exercise it, except under the idea of gaining some advantage to himself, by which he hopes to defeat the ends of justice; for if he be innocent, he will most certainly go into a trial, and vindicate himself at once, and not submit to imprisonment with the means of release at hand. Not only would these plain requirements of the law be defeated to hold as contended for, but other requirements in addition, given in section 5073, requiring the examination, recognizances, etc., to be returned to the court

to which the prisoner is consigned for trial; which are deemed so important, that it is enforced by making a failure a misdemeanor in office, and subject also to a penalty, to be recovered in a *qui tam action.* Unless some imperative rule of law should demand this, or great public policy be subserved by it, we cannot so construe the statute. We can see good reasons based in the interest of public justice, why the opposite view should be held.

If witnesses are not examined, their recognizances cannot be taken, and their appearance made more certain for the future purposes of the trial; for he is to do this only as to "each material witness *examined* by him on the part of the State." He can only know their materiality by hearing their testimony. In view of the migratory character of our population, and the additional fact that in many, perhaps a majority, of cases, crimes are committed in the midst of the most unreliable of our population, in this respect, around our saloons, or other haunts of vice, we can see the importance of having the testimony secured for the use of the State, by compliance with the requirements of the statutes we have cited.

We cannot but feel the force of the argument of this court in the case of *Johnson* v. *The State*, 2 Yer., 59, in maintaining the propriety of the rule, that the deposition taken under the statute in presence of the prisoner could be read on the trial of the case before a jury, in case of the death of the witness—that the death of the witness may amount to acquittal of the prisoner, and the inducement to procure such death,

State *v.* Miller.

would be precisely as great as the prisoner's interest would be in his own acquittal, it may be, of a capital offense.

If the testimony is taken down and preserved for further use, this temptation to make way with witnesses is removed. If the recognizance of the witnesses is taken to appear at court, it will be, at any rate, less easy to procure their absence by improper means. It is impossible to enforce the demands of justice without testimony, and every provision of our law tending to secure this essential feature of a' trial, should be sedulously guarded by our courts and steadily upheld. Mere mawkishness in favor of an accused party, should not make us relax any of the means provided by our Code which tend to give supremacy to law, and protection to the citizen, by enforcing its sanctions against offenders. All experience teaches that law can alone be effective to protect, by sternly, certainly, and speedily enforcing its penalties. These can be enforced only after a trial and conviction, and conviction can only be had upon testimony. Therefore, all that tends to secure this essential element of conviction, is of supreme importance, and demands to be carefully preserved by the courts.

The requirements we have cited, in view of the rule that in the event of the death of the witness, the deposition thus taken may be read on the trial, become matters that in future and possible contingencies, may be so essential to the enforcement of the law, that if neglected, there may be an entire failure of justice, and the worst criminal, who has trampled

the law under his feet, may go unwhipped of justice.

I am aware it may be said, why go to the trouble and delay of a trial or examination of witnesses for the State, when defendant concedes the result in advance? I might answer, it is sufficient that the statute has provided for it, in my opinion. When I look at its provisions, I think I see an imperative reason why a court should not make compliance depend on the option of the accused, and which exclude it. By section 5062, "The evidence of the witnesses examined shall be reduced to writing by the magistrate, or under his direction, and *signed* by the witnesses respectively." This looks to a careful preservation of this testimony, and its *authentication* by the signature of the witnesses. The officer is to reduce it to writing, or it must be done under his direction. Each witness must sign his deposition.

It is then certainly intended this should be done, not for the convenience or advantage of the accused, but evidently that it may be preserved in an authentic form. It is not certainly necessary to do this for any of the purposes of the preliminary trial, for his guilt or innocence may as well be determined without the testimony thus preserved and carefully authenticated, as when it is done. To give these requirements any meaning, I am compelled to assume that the Legislature has required the preservation of the testimony thus authenticated for ulterior uses. When I see such uses, as in case of the death of a witness, I see a reason, it seems to me, sufficient for the re-

State *v.* Miller.

quirement. If I did not see such a reason, it would be sufficient for me to say, the Legislature did, and it is my duty to enforce the mandate of the law-making power. It is certainly intended to be preserved in writing, and authenticated by the signature of the witnesses. This is not necessary for any of the purposes of the trial; therefore cannot depend upon a formal examination, for it may take place without it. If it is not a necessary incident to a trial, yet is required to be done, it follows, that it does not of necessity depend upon the formal trial, and a waiver of such formal trial cannot logically be held to interfere with the performance of the duty, unless we hold that the waiver of one thing shall prevent the doing of another thing, that is not a necessary incident to the thing waived. Its preservation, after authentication by the signature of the witness, not being for the purpose of the trial, but for ulterior use in subsequent contingencies, has therefore no relation to, and is not dependent on, the waiver of a trial by the prisoner. His waiver, to effect it, should then go to and involve a right to dispense with this ulterior use, or it can have no effect on the action of the magistrate at all as to this requirement. This right is not with the accused, as I think. In view of these considerations, I hold it is the duty of the magistrate, certainly in all cases capital, or which may be, to hear the testimony of witnesses for the State, when offered and insisted on, reduce the same to writing, and thus preserve it, and that this duty should be performed by him, independent of the question

whether the accused desires it or not. It is the requirement of the law, and has many elements of advantage and use to the State, some of which we have mentioned, others not; and the State should not be allowed to be deprived of them by the wary management of the accused, under the advice of astute counsel, who can scarcely be supposed to waive an investigation of the case, except with the hope of some advantage to be attained thereby. In this conclusion, however, a majority of my brethren do not concur, for reasons satisfactory to themselves. In the conclusion of the next question, however, the court does concur.

This brings us to the second question, whether, on the facts of this case, a *mandamus* is the proper and effective remedy?

It is said to be a general rule, that, whenever a statute gives a power to, or imposes an obligation on, a particular person to do some particular act or duty, and provides no other specific remedy on non-performance, a *mandamus* will lie. 6 Col., 330, citing Tappan on *Mand.*, 80–30. In the case of a judicial officer, when he fails or refuses to act, he can be compelled to proceed, and under same judgment in the case before him, but if it be an act judicial in its character, the court cannot direct how it shall be done, that is, *what* judgment he shall render—he will simply be compelled to act, to discharge his duty; otherwise, there would be a failure of justice. 6 Col., 81; Moses on *Mand.*, 17–18.

It is obvious from these principles, that the case must be one where at the time the *mandamus* issued

to the officer or inferior tribunal, the officer is in condition to comply with the mandate; the case must be still before the Judge, if it be directed to a judicial officer for adjudication; if to a ministerial officer, it must be where he is under obligations at the time to perform the act sought to be accomplished.

In this view, whether we say the duty in the case is strictly judicial or ministerial, the case has passed beyond the control of the defendant. He no longer has jurisdiction of the case. He has, in my opinion, acted erroneously in refusing to hear the testimony offered by the State, but *mandamus* does not lie to correct erroneous actions. He cannot now be directed to cause the accused to be again brought before him for trial. The Circuit Court now has control and jurisdiction over him.

We know of no power the magistrate would have to order him out of the jurisdiction of that court and bring him before him again to be re-tried for an offense upon which he has already acted and given judgment, and by it, transferred the party to another jurisdiction, which certainly has complete power over him to proceed, notwithstanding irregularities in the action of the magistrate before whom the preliminary steps were taken.

For these reasons, we think the petition should be dismissed.